NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOU E. JOHNSON,<br><br>                    Plaintiff,<br><br>v.<br><br>ANTHONY ZAGORI, et al.,<br><br>                    Defendants. | Civil Action No. 2:09-cv-04934<br>(SDW) (MCA)<br><br><br>OPINION<br><br><br>June 30, 2011 |

**WIGENTON**, District Judge.

Before the Court is Defendants' Motion for Summary Judgment ("Motion") pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendants' Motion.

**PROCEDURAL AND FACTUAL HISTORY**

On August 27, 2008, Plaintiff was at the Bergen County Jail for the purpose of attending a remand hearing dealing with his post-conviction relief application. At that time, he was an inmate at the Adult Diagnostic and Treatment Center (ADTC) as the result of a conviction for sexual assault. Since Plaintiff was not a long-term Bergen County Jail inmate, he was placed in a pre-classification unit referred to as N-1 and placed on 23 hour lock down.

1

Case 2:09-cv-04934-SDW-MCA   Document 49   Filed 06/30/11   Page 2 of 12 PageID: 661

      Around 9:15 p.m., Officer Anthony Zagori[1] permitted Plaintiff to leave his cell for his allotted time outside of his cell. Plaintiff proceeded to the shower area. According to Plaintiff, he was taking a shower when he saw Eric Trapp, another inmate, walk past the shower area towards the area where he believed Officer Zagori to be at that time. (Bohn Certification, Ex. 2 at 21-23.) Plaintiff states that Trapp then came into the shower and attacked him. Sometime during the fight Plaintiff felt a kick to his head and looked up to find Officer Zagori standing by the entranceway to the shower. Plaintiff and Trapp continued to fight until they were sprayed with oleoresin capsicum spray, also known as mace or pepper spray. During the altercation, other officers arrived at the scene.[2] However, Plaintiff cannot recall the number of officers, nor can he identify those officers, although he estimates that four were present. Plaintiff further testified that Trapp got up but Plaintiff "was still continuously getting maced and then [he] was thrown to the ground, stepped on, called names, punched and then put into the chicken wing hold, after a few minutes of being attacked."

      After the incident, Plaintiff was taken to the medical unit of Bergen County Jail. Nurse Guico asked Plaintiff to wash his eyes, examined him, and took his temperature and pulse. Plaintiff left Bergen County Jail on August 28, 2008 and returned to the ADTC. He was then taken to the medical unit of the ADTC and examined again. The chart notes from August 28, 2008, indicate that Plaintiff reported an injury to the right hand and both knees. Delores Guida, R.N., noted that the swelling to the hand was consistent with a "boxer" type injury and that Plaintiff had "good range of motion, intermittent pain, edema and ecchymosis noted to area." In addition, Plaintiff had "edema bilaterally to [the] knees"; complained of intermittent pain in both

---

[1] This defendant's name is spelled both as Zagori and Zagari in the documents.
[2] The log for that date lists the officers that responded to the incident as: Peter Servidio, Matthew Murray, Gerard Lombardo, and Jeff DiCostanzo.

knees; and had a few superficial abrasions on his right knee. Plaintiff was checked by Dr. Smyczek and x-rays were ordered. Plaintiff testified that the medical chart from his first visit to the ADTC medical unit is inaccurate as it states that he refused medication. He insists it was not offered to him.

Plaintiff once again visited the medical unit on August 30, 2008. (Bohn Certification, Ex. 5.) He was complaining of nausea and vomiting, and indicated that he had a bump behind his ear. Sharon Rory-Bryant, R.N., noted that no vomiting was observed; vital signs were stable; and that the "small bump" behind the ear had no discoloration or drainage, and was intact.

Plaintiff's second amended complaint ("Complaint"), filed on August 20, 2010, brings forth claims under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments of the United States Constitution; for conspiracy; for violation of *Riley v. Brown*, 2006 WL 1722622 (D.N.J., June 21, 2006); and for failure to train and supervise. He also brings forth claims of violations of various Bergen County rules, New Jersey statutes, and the New Jersey Constitution. Currently before this Court, is Defendants' motion for summary judgment.

**LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 323.

**DISCUSSION**

**42 U.S.C. § 1983 (Section 1983) Claims**

42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

The plaintiff in a Section 1983 action "must allege that some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

***Supervisory Defendants***

Section 1983 claims cannot be supported simply on the theory of respondeat superior. *Ward v. Taylor*, 348 Fed. App. 766, 769 (3d Cir. 2009). Supervisory liability requires personal involvement, meaning that the individuals involved had "personal direction or actual knowledge and acquiescence, in the wrongs alleged." *McKenna v. City of Phila.*, 582 F.3d 447, 460 (3d Cir. 2009). A plaintiff may also "establish section 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior." *Argueta v. United States Immigration & Customs Enforcement*, 2011 U.S. App. LEXIS 11983, 34 (3d Cir. June 14, 2011) (quoting *Baker v. Monroe Township*, 50 F.3d 1186, 1191 n.3 (3d Cir. 1995)). A supervisor may also be held liable for wrongdoing under Section 1983 "if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." *Id.*

Further "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). In those cases, a "plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). To reiterate, the deficiency in training must be identified and "it must be closely related to the ultimate injury." *City of Canton v. Harris*, 489 U.S. at 391.

Defendants Leo P. McGuire, Donald Crandall, and Roy Young were not present when Plaintiff's alleged injuries occurred and therefore any claims against them implicates their

5

supervisory roles. The evidence presented to this Court does not support the assertions that these defendants had actual knowledge of the events in question; that they tolerated past or ongoing behavior; or that they implemented policies or practices. Plaintiff's accusations alone are insufficient to support claims against these defendants. The only evidence cited by Plaintiff to support his supervisory liability claims are the certifications of Michael B. D'Arrigo and Graham Hurley. D'Arrigo's certification generally describes his experience with Bergen County Jail but does not name any of the defendants in this action. Hurley's certification, although referred to in Plaintiff's brief, was not submitted to this Court. Finally, Plaintiff has not identified the deficiency in training that led to his injuries.

**Eight Amendment Claims**

Cruel and unusual punishment, including "the unnecessary and wanton infliction of pain," is prohibited by the Eighth Amendment of the United States Constitution. *Zimmerman v. Schaeffer*, 654 F. Supp. 2d 226, 247 (M.D. Pa. 2009) (citing U.S. Const. amend. VIII). This prohibition "restrains prison officials from certain actions (e.g., the use of excessive force against prisoners), and imposes on them a duty to provide 'humane conditions of confinement.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010). Humane conditions of confinement include adequate medical care and requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

<u>Failure To Protect From Other Inmates</u>

Prison officials have a duty to protect inmates from violent attacks from other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, the Supreme Court has specified that not "every injury suffered by one prisoner at the hands of another [] translates into constitutional

liability for prison officials responsible for the victim's safety." *Id.* To prevail on an Eighth Amendment claim for failure to protect from other inmates, a plaintiff must show both a substantial risk of harm and deliberate indifference to that risk by the prison officials. *Id.* at 828.

The substantial risk of harm under these circumstances must be objectively serious. *Heggenmiller v. Edna Mahan Corr. Inst.*, 128 Fed. App. 240, 245 (3d Cir. 2005). "Deliberate indifference, in turn, requires a subjective showing that a prison official 'knows of and disregards' that risk: 'the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. at 834). The Supreme Court has explained that "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer v. Brennan*, 511 U.S. at 836.)

Plaintiff has not presented any evidence to this Court that Defendants were aware that a substantial risk of serious harm existed. According to Plaintiff's own testimony, every other aspect of his stay at Bergen County Jail was uneventful until his altercation with Trapp. Officer Zagori did not observe any movements or activities that would lead him to infer that Trapp might want to physically attack Plaintiff. Trapp gave no indications of an intention to hurt Plaintiff prior to the fight. Therefore, even if this Court were to draw all possible inferences in Plaintiff's favor, nothing in the record points to knowledge on behalf of any of the Defendants of a substantial risk of harm to Plaintiff.

Excessive Force

"The test for whether a claim of excessive force is constitutionally actionable is 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir.

7

2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The Court ensures that "contemporary standards of decency" are not violated. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). Thus, the court will not recognize "de minimis use of physical force" as a constitutional violation "provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* A court examining an excessive force claim, must consider the following factors:

>  (1) the need for the application of force;
>  (2) the relationship between the need and the amount of force that was used;
>  (3) the extent of injury inflicted;
>  (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and
>  (5) any efforts made to temper the severity of a forceful response.
>
>  [*Giles v. Kearney*, 571 F.3d at 326.]

Charges of cruel and unusual punishment due to beatings are to be made against particular defendants and not against all defendants generally. *See Howell v. Cataldi*, 464 F.2d 272, 283 (3d Cir. 1972) (affirming a district court's decision directing a verdict in favor of defendants because plaintiff failed to "make an appropriate identification" and stating that this scenario is analogous to the imposition of "individual criminal liability where there are multiple actors in an assault and the identification testimony is ambiguous"). Case law from other districts explains that because the court must "inquire into the state of mind of prison officials who have allegedly caused a constitutional violation," it is the plaintiff's burden to use discovery to identify the particular individuals who caused the harm. *Hunt v. Dart*, 754 F. Supp. 2d 962, 977 (N.D. Ill. 2010).

Application of force by Officer Zagori was necessary to stop the fight between Defendant and Trapp. Such was the case, that even after Plaintiff felt a kick to his head, he continued to

fight with Trapp. In addition, medical records indicated that Plaintiff did not suffer significant injuries due to this incident. In fact, his most serious injuries, those to his hand, appear to be from his beating Trapp and not inflicted by Officer Zagori. The incident was a threat to both inmates as well as responding staff members. Further, aside from Officer Zagori, Plaintiff cannot identify whom amongst the other officers used force against him. He has only identified those present according to prison records but has not identified which particular officers had physical contact with him that day. Thus, Plaintiff's excessive force claims cannot survive summary judgment.

<u>Failure to Provide Medical Treatment</u>

Plaintiffs in these cases "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical condition has been defined as "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 987) (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), aff'd, 649 F.2d 860 (3d Cir. 1981)). Deliberate indifference "has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse v. Plantier*, 182 F.3d at 197. The Third Circuit has found deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment"; or (4) "persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" *Id.* (citations

omitted). Claims of negligence, medical malpractice, or "inadvertent failure to provide adequate medical care" do not constitute deliberate indifference. *Id.*

Plaintiff has not presented evidence from which a reasonable fact finder could find that Nurse Guico demonstrated deliberate indifference towards Plaintiff's injuries. She examined him without delay, and there is no evidence before this Court that she was aware of an injury that she refused to treat. The only information that Nurse Guico had was provided by the staff as she did not ask Plaintiff any questions and Plaintiff did not complain to her of pain.

**Fourteenth Amendment**

Plaintiff does not claim to be a member of a suspect class and explains that his claims are not due process claims but equal protection claims based on the "class of one theory." (Pl.'s Br. at 26.) The Equal Protection Clause of the Fourteenth Amendment requires like treatment of those similarly situated. *Mann v. Brenner*, 375 Fed. App. 232, 238 (3d Cir. 2010). Equal Protection claims may be "brought by a 'class of one,' where the plaintiff alleges that [he or] she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A plaintiff bringing a claim under this theory must demonstrate that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Mann v. Brenner*, 375 Fed. App. at 238 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008)).

This claim must therefore also fail. Plaintiff has not claimed that only he is being treated differently from similarly situated individuals. Further, he does not identify those similarly situated, nor how others in his position have been treated differently. His only argument

references another group of inmates, those who have been charged but not convicted of sex offenses and who are being housed at the Bergen County Jail.

**Conspiracy**

For a claim of conspiracy under Section 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" *Green v. City of Paterson*, 971 F. Supp. 891, 908 (D.N.J. 1997) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993)). For this claim to be actionable "plaintiff must show both agreement and actual deprivation of constitutional right." *Id.* (citing *Brennan v. Hendrigan*, 888 F.2d 189, 195 (1st Cir. 1989)).

Likewise, under 42 U.S.C. § 1985, a "[p]laintiff must demonstrate that (1) there was a conspiracy of [d]efendants designed to deprive [p]laintiff of equal protection of the law; (2) [d]efendants committed an overt act in furtherance of that conspiracy; (3) [p]laintiff's rights were violated as a result of this action; and, (4) [d]efendants' actions were [motivated] by racial or otherwise class-based invidiously discriminatory animus." *Rife v. Borough of Dauphin*, 647 F. Supp. 2d 431, 450 (M.D. Pa. 2009). The plaintiff must point to specific facts showing that the defendants "reached an understanding or agreement to violate Plaintiff's civil rights" and not just that they "had a common goal or acted in concert." *Id.* (citing *Martin v. Del. Law Sch. of Widener Univ.*, 625 F. Supp. 1288 (D. Del. 1985), judgment aff'd, 884 F.2d 1384 (3d Cir. 1989)). "In order to prove the existence of a civil conspiracy, Plaintiff must show that the conspirators agreed to inflict injury upon him; in other words, that they acted with a single plan, the general nature and scope of which was known to each conspirator." *Id.*

Plaintiff testified that he never saw Officer Zagori speaking with the other officers prior to the attack nor speaking to Trapp. (Bohn Certification, Ex. 2 at 22, 46.) Defendants are

11

entitled to summary judgment because Plaintiff has not put forth evidence of an agreement between any of the parties.

## CONCLUSION

Plaintiff included *Riley v. Brown*, 2006 WL 1722622, as a separate cause of action. However, any arguments as to what exactly was Plaintiff's claim are now moot since he stated in his brief that he agrees that *Riley v. Brown* does not provide an independent cause of action. Further, this Court declines to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367. Defendants' motion for summary judgment is granted as to all claims for the reasons stated above.

s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
Cc:     Parties